**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : : : CIVIL ACTION NO.: : Plaintiff, : : COMPLAINT FOR PERMANENT : INJUNCTION, CIVIL MONETARY v. : PENALTIES, AND OTHER EQUITABLE : RELIEF InterForex, Inc., : : Defendant. : |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its

attorneys, alleges as follows:

## I.   <u>SUMMARY</u>

1.     On October 18, 2010, the CFTC adopted new regulations implementing certain

provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L.

No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010) ("Dodd-

Frank Act"), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), and the Food, Conservation,

and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008

("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C.

§§ 1 *et seq.*, with respect to off-exchange foreign currency ("forex") transactions.  Pursuant to

Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act ("the Act"), as amended, to be

codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity must be registered if it wants to solicit or

accept orders from a non-Eligible Contract Participant ("ECP") in connection with forex

transactions at a retail foreign exchange dealer ("RFED") or futures commission merchant.

Pursuant to CFTC Regulation ("Regulation") 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), in

connection with retail forex transactions, all RFEDs must be registered with the CFTC as of October 18, 2010.

2.     Beginning on October 18, 2010 and continuing to the present (the "relevant period"), Defendant InterForex, Inc. ("InterForex"), upon information and belief, solicits or accepts orders from non-ECPs located in the United States in connection with retail forex transactions and is, or offers to be, the counterparty to these retail forex transactions without being registered as an RFED with the CFTC, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

3.     By virtue of this conduct and the further conduct described herein, InterForex has engaged, is engaging, or is about to engage in acts and practices in violation of the Act, as amended, and the Regulations.

4.     Accordingly, pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin InterForex's unlawful acts and practices and to compel its compliance with the Act, as amended, and the Regulations and to further enjoin InterForex from engaging in certain commodity or forex-related activity, including, through its website, soliciting or accepting orders from customers or offering to be the counterparty to customers' forex transactions, without appropriate registration with the Commission.

5.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6.      Unless restrained and enjoined by this Court, InterForex likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

7.      Section 6c(a) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

8.      The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2) and 6c of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2) and 13a-1.

9.      Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(e), because InterForex transacts business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.      PARTIES

10.      Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

11.      Defendant **InterForex, Inc.** is a company that is located in Tortola, British Virgin Islands.  InterForex's principal place of business is Third Floor, P.O. Box 875, Qwomar Trading Building, Road Town, Tortola, British Virgin Islands VG1110.  On information and belief,

InterForex also appears to have an office at 167 Madison Avenue, New York, NY, 10016.

InterForex has never been registered with the Commission in any capacity.

## IV.    STATUTORY BACKGROUND

12.    For the purposes of trading retail forex, a "retail foreign exchange dealer" is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for certain persons not relevant to this Complaint.

13.    An ECP is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a.

## V.    FACTS

14.    On October 18, 2010, the Commission adopted new regulations implementing certain provisions of the Dodd-Frank Act and the CRA. For the purposes of retail forex transactions, the new regulations, among other things, require RFEDs to register with the CFTC.

15.    On information and belief, InterForex solicits or accepts orders from United States customers who are not ECPs to open leveraged forex trading accounts through its website, www.interforex.net. This website is hosted by a webhost located in Renton, Washington and the domain name is registered through a domain name registrar in Scottsdale, Arizona.

16.    As InterForex's website demonstrates, it offers to accept funds from United States customers for the purpose of opening and maintaining individual retail forex accounts.

17.    According to its website, "InterForex offers its clients a variety of leveraged trading accounts."

18.     As advertised on its website, InterForex offers four types of forex trading accounts: "IFX Classic" that requires an opening minimum deposit of $500; "IFX Professional" that requires an opening minimum deposit of $2,000; "IFX Active Trader" that requires an opening minimum deposit of $25,000; and "IFX Premium" that requires an opening minimum deposit of $100,000.  The amounts required to fund these accounts are quoted in United States dollars.

19.     Customers can open trading accounts by submitting information online through InterForex's website, or emailing the company at newaccounts@interforex.net, or by completing account opening documents supplied to them by a "Referring Agent" or an "Introducing Broker."

20.     To open an account by submitting information online, the website directs customers to click on a link titled "How to Open a Trading Account," then proceed to another link titled "online application form."

21.     If the customer clicks on the online application form link, s/he will be redirected to another page to enter certain information, such as his or her name, address, telephone and email contact information, nationality, type of account to open, and trading platform to be used. There is a drop down menu for "nationality" and customers can choose "American." There is also a drop down menu for "country" in the address section that allows the customer to choose United States.  The page also allows for documents to be uploaded, and specifically requests that documents representing a government issued ID, a bank statement, and proof of residence be uploaded to the website.  The customer must also check an "I agree" circle next to "InterForex Client Agreement" in order to open the account.  The customer is then guided to click the "submit" button to open the trading account.

22.     If the customer clicks on the "Client Agreement" link, the Individual/Joint/Corporate Client Agreement ("Client Agreement") document opens.

23.     The Client Agreement asks that the prospective customer to enter certain information, such as her name, address, including country of residence, country of citizenship, telephone and email contact information, and include a photocopy of a valid government issued photo identification.

24.     InterForex inquires about an account holder's annual income and net worth. Under the "estimated annual income" fill-in section, it states, "if your annual income is less than $25,000, please review the "High Risk Investment Notice" on page 12." The "Net Worth" fill-in section includes options to check boxes with a net worth under $25,000, $25,000- $49,999, $50,000- $99,999- $100,000- $249,999, $250,000- $1,000,000, and over $1,000,000. Under the net worth fill-in section, it states, "If your net worth is less than $50,000, please review the "High Risk Investment Notice" on page 12." InterForex fails to inquire whether its customers are "eligible contract participants" and, in fact, appears to allow individual customers who do not have total assets of $5 million to open accounts.

25.     The InterForex Client Agreement fails to inquire into whether the prospective customer has the ability or the business need to accept foreign currency into the customer's bank account.

26.     On information and belief, the forex transactions InterForex engages in neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts remain open from day to day and ultimately

are offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

27.     According to the website, after the application is reviewed, the customer receives wire instruction via email in order to fund their account.

28.     InterForex offers to act as a counterparty to U.S. customers.  On page 15 of the Client Agreement, it states, "InterForex is acting as a counterparty in these transactions and, therefore, acts as the buyer when you sell and the seller when you buy."

29.     Thus, InterForex has been and is acting as an RFED and continues to do so by offering to act as a counterparty for United States customers to trade forex at InterForex.

30.     By the date of the filing of this complaint, InterForex has not registered with the Commission as an RFED or in any other capacity.

31.     Furthermore, InterForex is not exempt from registration.

### VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

**COUNT ONE:**
**VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, AS AMENDED:**
**FAILURE TO REGISTER**

32.     Paragraphs 1 through 31 are realleged and incorporated herein.

33.     During the relevant period, InterForex solicits or accepts orders from non-ECPs in connection with leveraged or margined forex transactions at an RFED.  InterForex engages in this conduct without being registered at an RFED, as required by Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), all in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

34.     Each day that InterForex engages in this conduct since October 18, 2010 is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

## COUNT TWO:
## VIOLATION OF REGULATION 5.3(a)(6)(i)
## FAILURE TO REGISTER AS A RETAIL FOREIGN EXCHANGE DEALER

35.     Paragraphs 1 through 31 are realleged and incorporated herein.

36.     During the relevant period, InterForex is, or offers to be, the counterparty to retail forex transactions without being registered as an RFED in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3a) (6)(i) (2011).

37.     Each day that InterForex fails to register as an RFED since October 18, 2010 is alleged as a separate and distinct violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

## VII. RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.      An order finding that InterForex violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

B.      An order finding that InterForex violated Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

C.      An order of permanent injunction prohibiting InterForex, and any other person or entity associated with it, from engaging in conduct in violation of

Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

D.      An order of permanent injunction prohibiting InterForex, and any other person or

entity associated with it, from engaging in conduct in violation of Regulation 5.3(a)(6)(i),

17 C.F.R. § 5.3(a)(6)(i) (2011);

E.      An order of permanent injunction prohibiting InterForex, and any other person or

entity associated with it or its website, from operating its website while in violation of

Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i),  17 C.F.R. § 5.3(a)(6)(i)

(2011);

F.      An order of permanent injunction prohibiting InterForex and any successor

thereof, from, directly or indirectly:

    1)      Trading on or subject to the rules of any registered entity (as that term is

    defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

    2)      Entering into any transactions involving commodity futures, options on

    commodity futures, commodity options (as that term is defined in

    Regulation 32.1(b)(1)), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"),

    swaps, and/or foreign currency (as described in Sections 2(c)(2)(B) and

    2(c)(2)(C)(i) of the Act, as amended,  to be codified at 7 U.S.C. §§ 2(c)(2)(B) and

    2(c)(2)(C)(i)) ("forex contracts"), for its own personal account or for any account

    in which it has a direct or indirect interest;

    3)      Having any commodity futures, options on commodity futures,

    commodity options, swaps, and/or forex contracts traded on its behalf;

4)      Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account involving

commodity futures, options, commodity options, swaps, and/or forex contracts;

5)      Soliciting, receiving or accepting any funds from any person for the

purpose of purchasing or selling any commodity futures, options on commodity

futures, commodity options, swaps, and/or forex contracts;

6)      Applying for registration or claiming exemption from registration with the

CFTC in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the CFTC except as provided for in

Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

7)      Acting as a principal (as that term is defined in Regulation 3.1(a),

17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person

registered, exempted from registration or required to be registered with the CFTC

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

G.      Enter an order requiring that InterForex, as well as any of its successors, disgorge

to any officer appointed or directed by the Court all benefits received including, but not

limited to, salaries, commissions, loans, fees, revenues and trading profits derived,

directly or indirectly, from acts or practices that constitute violations of the Act, as

amended, and the Regulations, including pre and post-judgment interest;

H.      Enter an order directing InterForex and any successors thereof, to rescind,

pursuant to such procedures as the Court may order, all contracts and agreements,

whether implied or express, entered into between it and any of the customers whose

funds were received by them as a result of the acts and practices, which constituted

violations of the Act, as amended, and the Regulations as described herein;

I.      Enter an order requiring InterForex to pay civil monetary penalties under the Act,

to be assessed by the Court, in amounts of not more than the greater of: (1) triple its

monetary gain for each violation of the Act, as amended, and the Regulations or (2)

$140,000 for each violation committed on or after October 23, 2008;

J.      Enter an order requiring InterForex to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

K.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated: September 7, 2011            Respectfully submitted,

                                    COMMODITY FUTURES TRADING COMMISSION

                                    /s/ Jennifer S. Diamond

                                    Jennifer S. Diamond, , Illinois ARDC No. 6278482
                                    Senior Trial Attorney
                                    jdiamond@cftc.gov

                                    Elizabeth M. Streit,  Illinois ARDC No. 06188119
                                    Chief Trial Attorney

                                    Scott R. Williamson,  Illinois ARDC No. 06191293
                                    Deputy Regional Counsel

                                    Rosemary Hollinger,  Illinois ARDC No. 3123647
                                    Regional Counsel

                                    Attorneys for Plaintiff
                                    Commodity Futures Trading Commission

                                    525 West Monroe Street, Suite 1100
                                    Chicago, Illinois 60661
                                    (312) 596-0549 (Diamond)
                                    (312) 596-0537 (Streit)

(312) 596-0560 (Williamson)
(312) 596-0520 (Hollinger)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)